Matter of Walsh v Scanlon (2004 NY Slip Op 24043)

Matter of Walsh v Scanlon

2004 NY Slip Op 24043 [3 Misc 3d 254]

February 18, 2004

Supreme Court Of The State Of New York, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, June 22, 2004

[*1]
In the Matter of Joseph C. Walsh et al., Petitioners,
v
Kevin Scanlon, as President of New York State Court Clerks Association, et al., Respondents.
Supreme Court, New York County, February 18, 2004

APPEARANCES OF COUNSEL

Joseph C. Walsh, petitioner pro se. James Shields, petitioner pro se. Christopher Sullivan, petitioner pro se. Jerry D. Ash, intervenor-petitioner pro se. Duane Morris LLP, New York City (Eve I. Klein and Maria Cilenti of counsel), for respondents.

{**3 Misc 3d at 254} OPINION OF THE COURT

Herman Cahn, J.
{**3 Misc 3d at 255}Motion sequence numbers 001 and 002 are consolidated for disposition.
In motion sequence number 001, pro se petitioners Joseph C. Walsh, James Shields, and Christopher Sullivan move to compel the president and the treasurer of the New York State Court Clerks Association to provide members of the board of directors with copies of all receipts of expenditures made by the Association for the years 1997 through 2002, and to nullify the September 23, 2003 appointment of Joel Cohen and Larry Russo as treasurer and secretary of the Association, respectively.[FN1]

In motion sequence number 002, Jerry Ash, a member of the Association, also appearing pro se, seeks to intervene as a petitioner, and seeks an order compelling the board to abide by certain specific provisions of the Association's constitution and bylaws.
This proceeding arises out of petitioners' dissatisfaction with the way certain matters are being handled by the union. Specifically, Walsh contends that the financial reports for 1997 to 2003 were not prepared in the proper format until May 2003. Upon receiving the newly prepared financial reports, Walsh states that he was disturbed by the pattern and level of certain expenditures, and made a written request for copies of all receipts upon which the financial reports were based. The Association's treasurer denied the request, claiming Walsh had no valid, just or reasonable cause for making it. Walsh maintains that, as a member of the board of directors, with the responsibility to exercise control over expenditures, he does not need cause to obtain access to the underlying receipts; he requires access to properly perform his duties as a director.
[*2]
Walsh's position is without merit. Neither the Association's constitution nor its bylaws authorize any individual member of the board to have access to the materials underlying the financial statements. While it is true that expenditures must be made under the control of the board (constitution art XX), and that the management and affairs of the Association are under the control of the board (id. art VI), those powers are not invested in each member of the board individually. Rather, they are invested in the board as a whole. Consequently, unless the board votes to review such materials, an individual member does not have the authority to obtain access to those materials.{**3 Misc 3d at 256}
The Labor Law, which contains the rules and regulations governing the financial reports of labor unions, does not provide the power Walsh seeks. Labor Law § 726 provides that a labor organization must make its annual financial reports available to its members. The president and treasurer are personally responsible for the preparation of the report, and are required to verify it. The regulations promulgated in conjunction with the Labor Law provide that "[e]very labor organization . . . shall be under a duty to permit its members for just cause to examine any books, records and accounts necessary to verify the annual financial report." (12 NYCRR 550-2.1 [e].) Here, Walsh is not suggesting that he has demonstrated "just cause" which would entitle him, or any other union member, to examine the books and records of the union. Instead, he asserts such a right purely on the basis that he is a member of the board. Thus, he has not demonstrated any recognized basis for obtaining access to the records he seeks.
Walsh maintains that, without the ability to review the underlying documentation, he cannot properly do his job as a member of the board. However, his obligation is to work together with other board members to manage the affairs of the Association. If the board, as a whole, voted to allow one or more of its members to examine the books and records, that would be permitted, and indeed required. However, Walsh's motion, made at a board meeting, to compel the president and treasurer to provide any member of the board with such information was not passed.
Even without reviewing the underlying books and records, the board members should be able to determine whether the union's spending is appropriate or warrants further investigation, because major expenditures cannot be made without board approval. If any such expenditures are improperly made, Walsh would presumably become aware of it, and would, then, be able to assert "just cause" to examine the books, records and accounts, as provided in 12 NYCRR 550-2.1. Thus, Walsh's concerns regarding his ability to perform his function can be addressed without the relief he seeks.
Shields contests the actions of the Association's president in filling the position of treasurer with the then-secretary, and filling the secretary position with the then-recording secretary. Shields contends that the president is authorized, under the constitution and bylaws, to fill these positions only from among members who are directors of the Association, not from those who are already officers.{**3 Misc 3d at 257}
The board consists of officers, who are elected in city-wide elections, and directors, or delegates, who are elected by clerks of their title. Elections for officers are held at different times from elections for directors. (See constitution art IX.)
The constitution provides that where any officer's office becomes vacant, "the President may appoint a Director to serve as an Officer . . . until a regular scheduled election the [*3]following June." (Constitution art XVI.) According to Shields, this means that only a member of the board of directors, who is not an officer, can be so appointed. The Association argues that the constitution and bylaws do not use the term "director" to mean only nonofficers.
"Director" has been used in the constitution to mean all members of the board, including officers. Thus, for example, the bylaws state, in section 3, that "each Director, except the President, shall be entitled to one vote. The President shall be Chairman and shall vote only in case of tie." In this section, the term "Director" clearly applies to all members of the board, officers as well as the other members. The same usage of the term "director" to include officers appears in article XXX of the constitution, where it provides that proposed changes to the bylaws require a two-thirds vote by the directors who are present to pass the amendment. Further, the long-standing application of article XVI in this Association allows the president to appoint either an officer or a nonofficer member of the board to fill vacancies. Affidavits of longtime members of the union state that the president has appointed an officer to fill vacancies on many occasions, including while petitioners were members of the board. Respondent Joel Cohen cites five occasions of such appointments since Walsh became a member of the board in 1995. (Cohen affidavit ¶ 27.) In fact, even Walsh's letter, asking to be considered for the position of treasurer, states that the president can appoint a member of the board to fill the vacancy, and does not suggest that the president is limited to choosing a nonofficer director. (Verified petition exhibit I.)
"Courts have consistently held that a union's 'interpretation of its own constitution is entitled to "great deference" and will be upheld unless "patently unreasonable." ' " (Brodsky v Union Local 306, 1999 WL 102763, *3, 1999 US Dist LEXIS 1870, *8 [SD NY 1999], affd 205 F3d 1321 [2d Cir 2000], cert denied 530 US 1231 [2000].) Here, petitioners do not deny that the union's practice and interpretation is entitled to deference, or that it has, for many years, interpreted its constitution to permit the president {**3 Misc 3d at 258}to appoint officers or other members of the board to fill officer vacancies. Rather, they rely solely on the language of the constitution. However, as discussed above, the constitution and bylaws do not use the word "directors" to exclude officer members of the board. In view thereof, the interpretation that the Association gives is not "patently unreasonable" (see Sim v New York Mailers' Union No. 6, 166 F3d 465, 470 [2d Cir 1999]), and deference must be given to that interpretation. Accordingly, the president's appointment of officers to the vacant officer positions was proper.
In motion sequence number 002, Ash seeks to intervene. He alleges that, during 1997 to 2002, the Association permitted checks to be drawn which were not duly and properly authorized in accordance with union regulations. Specifically, reimbursements above $350 were made without being authorized by the board. Ash seeks to "compel the Board of Directors to abide with the recognized, substantial, legally enforceable right to the specific performance of the provisions of the contract between the New York State Court Clerks Association and its members."
Respondents contend that the board is currently scheduled to address this issue, but offer no evidence that the board has, in fact, taken up this matter. The union also has not offered any basis for denying Ash's request on the merits. Instead, it limits its opposition to saying that it vigorously disputes Ash's contentions, and argues that Ash is not entitled to intervene, and that he should commence a separate action.
The court has discretion to grant intervention when a person's claim presents a common [*4]question of law or fact, taking into consideration whether the intervention will unduly delay the determination of the action or prejudice the rights of a party. (CPLR 1013.) Here, there will be no delay if Ash is permitted to intervene, nor will his intervention prejudice the rights of any party. Ash, like petitioners, seeks to have the court review the union's constitution and bylaws, and to require the union to adhere to them. Accordingly, intervention is appropriate, and is granted.[FN2]

Section 6 of the bylaws provides that "[t]he authorization of the Board of Directors shall be required to authorize payment of expenditures in excess of Three Hundred Fifty Dollars{**3 Misc 3d at 259} ($350.00) for the conduct of the organization business." Respondents do not dispute either the fact or the meaning of this section. The fact that new procedures have been proposed to govern the board's approval of certain expenditures in no way affects the binding nature of section 6. The board is required to follow the mandate of the bylaws, and no expenditure above $350 may be made without the approval of the board so long as section 6 remains in effect. This is in no way to be construed as a determination as to whether or not the union has adhered to section 6 until now, which issue is left open. If Ash seeks further relief, as to past expenditures, etc., he may apply for the same in this proceeding, within 30 days of service upon him by mail of a copy of this decision and order.
Accordingly, it is ordered that motion sequence number 002 is granted to the extent that Jerry D. Ash is permitted to intervene as an intervenor-petitioner; and it is further ordered that the caption of this proceeding shall be amended accordingly; and it is further ordered and adjudged that the petition is granted to the extent that the New York State Court Clerks Association is directed not to make any expenditures in an amount above $350 without the approval of the board of directors; and it is further ordered and adjudged that the petition (of Walsh, Shields and Sullivan) is otherwise denied; and it is further ordered that the intervenor-petitioner's petition and proceeding shall continue.

Footnotes

Footnote 1: Walsh and Shields have submitted separate petitions under the same index number. Both petitions are deemed to be the petition in this proceeding.

Footnote 2: The petition is thus deemed to include Walsh's, Shields' and Ash's petitions.